JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-1330 JGB (SPx)** | Date | January 25, 2024 |
|---|---|---|---|
| Title | *GS Holistic, LLC v. P&I Forever Corp, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) GRANTING Plaintiff's Motion for Default Judgment (Dkt. No. 15); and (2) VACATING the January 29, 2024 Hearing (IN CHAMBERS)

Before the Court is Plaintiff GS Holistic, LLC's motion for default judgment. ("Motion," Dkt. No. 15.)  The Court finds this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of the Motion, the Court **GRANTS** the Motion.  The January 29, 2024 hearing is **VACATED**.

## I.   BACKGROUND

On July 7, 2023, Plaintiff GS Holistic, LLC ("Plaintiff") filed a complaint against Defendants P&I Forever Corp d/b/a Quality Cigarettes ("Quality Cigarettes") and Elhamy S. Youssef ("Youssef") (jointly, "Defendants").  ("Complaint," Dkt. No. 1.)  The Complaint asserts claims for (1) trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114 and (2) false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).  (See id.)

On August 21, 2023, Defendant Quality Cigarettes was properly served with the summons and Complaint.  (See "Quality Cigarettes Proof of Service," Dkt. No. 11.)  Specifically, Quality Cigarettes was served by substituted service when a process server left the documents with a person at least 18 years of age apparently in charge at Quality Cigarettes' office or usual place of business.  (See id.)  The process server thereafter mailed copies of the documents to the

service address. (See id.) Pursuant to Federal Rule of Civil Procedure 12(a),[1] Quality Cigarettes' responsive pleading was due no later than September 11, 2023. To date, Quality Cigarettes has not filed a responsive pleading. As a result, on October 10, 2023, Plaintiff filed a request for entry of default against Quality Cigarettes. (Dkt. No. 13.) On October 11, 2023, the Clerk of this Court entered default against Quality Cigarettes. ("Default," Dkt. No. 14.)

On August 21, 2023, Youssef was properly served with the summons and Complaint. (See "Youssef Proof of Service," Dkt. No. 12.) Specifically, Youssef was served by substituted service when a process server left the documents a person at least 18 years of age apparently in charge at Youssef's office or usual place of business. (See id.) The process server thereafter mailed copies of the documents to the service address. (See id.) Pursuant to Rule 12(a), Youssef's responsive pleading was due no later than September 11, 2023. To date, Youssef has not filed a responsive pleading. As a result, on October 10, 2023, Plaintiff filed a request for entry of default against Youssef. (Dkt. No. 13.) On October 11, 2023, the Clerk of this Court entered default against Youssef. (Default.)

On December 5, 2023, Plaintiff filed this Motion for default judgment against Defendants. (Motion.) Plaintiff seeks $150,000 in damages, $925.28 in costs, and permanent injunctive relief. (See Motion at 5, 21.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b) ("Rule 55(b)"), a court may order default judgment following the entry of default by the Clerk of the Court. Fed. R. Civ. P. 55(b). Under Local Rule 55-1, a party moving for default judgment must also file a declaration that conforms to Rule 55(b) and sets forth the following information:

> (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Relief Act does not apply; and (5) that notice of the application has been served on the defaulting party, if required.

L.R. 55-1.

Whether to enter default judgment is within the court's sound discretion court. Aldabe v. Aldabe, 616 F.2d 1089, 1092–93 (9th Cir. 1980). In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth seven factors to consider when determining whether to grant default judgment:

---

[1] All subsequent references to "Rule(s)" refer to the Federal Rules of Civil Procedure, unless otherwise specified.

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Id. at 1471–72 ("Eitel factors"). Upon entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven. TeleVideo Sys. Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). A plaintiff is required to provide evidence of her damages, and a court may rely only on the declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). Further, the damages sought must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III.   DISCUSSION

Plaintiff seeks monetary relief in the total amount of $150,925.28 and permanent injunctive relief. (See Motion at 5, 21.) In order for default judgment to be entered in its favor, Plaintiff must meet the procedural requirements described above and establish that, on balance, the Eitel factors weigh in its favor. The Court considers these factors below.

### A. Procedural Requirements

Plaintiff has satisfied the procedural requirements for entry of default judgment. Pursuant to Rule 55, Plaintiff did not move for default judgment until after the Clerk entered default against Defendants. Plaintiff submits the affidavit of attorney Tomas Leon with the information required by Local Rule 55-1. ("Leon Decl.," Dkt. No. 15-3.)

### B. Eitel Factors

#### 1. Possibility of prejudice to plaintiff

Plaintiff would suffer prejudice if the Court does not enter default judgement. Because Defendants have not appeared in this action, a default judgment is the only means by which Plaintiff may obtain relief. Absent a default judgment by this Court, Plaintiff would "be forced to continue the litigation even though no party has filed an answer or a claim." United States v. Approximately $194,752 in U.S. Currency, 2011 WL 3652509, at *3 (N.D. Cal. Aug. 19, 2011). Therefore, this factor favors of default judgment. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding that the plaintiff would suffer prejudice absent the entry of a default judgment because of the defendant's unwillingness to cooperate and defend against the claim).

//
//

2. **Substantive merits of plaintiff's claims**

The second and third Eitel factors concern the merits of Plaintiff's substantive claims, and the sufficiency of the complaint. Eitel, 782 F.2d at 1471-72. "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) (alteration in original) (citation omitted). Plaintiff seeks default judgment for both its trademark infringement and false designation of origin claims against Defendants. (See Motion.)

A defendant infringes on a trademark when, without the consent of the registered trademark holder, it uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on claims for false designation of origin under the Lanham Act (which addresses federal trademark law), a plaintiff must show that a defendant uses a word, term, name, symbol, device, or false designation of origin in commerce in connection with goods or services, and that such use "is likely to cause confusion or . . . mistake . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A).

Infringement claims brought under 15 U.S.C. §§ 1114 and 1125 are subject to the same test: "[T]he critical determination is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2008) (internal quotations and citations omitted). To find a "likelihood of confusion," neither actual confusion nor intent is necessary. See Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1998).

Here, Plaintiff alleges that since 2020, it has marketed and sold products using the trademark "Stündenglass." (Complaint ¶ 8.) As a result of its continuous and extensive use of the trademark "Stündenglass," Plaintiff was granted both valid and subsisting federal statutory and common law rights to the trademark. (Id. ¶ 10.) Plaintiff is the rightful owner of the following federally registered trademarks ("Stündenglass Marks"):

- U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011.
- U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034.
- U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034.

(Id. ¶ 11.) These registrations are valid, subsisting, and in full force and effect. (Id. ¶ 12.)

The Stündenglass Marks are exclusive to Plaintiff and appear clearly on Plaintiff's products, as well as on related packaging and advertisements. (Id. ¶ 15.) Plaintiff has expended substantial time, money, and resources in developing, advertising, and otherwise promoting and protecting these trademarks. (Id.) As a result, the Stündenglass Marks are widely recognized and distinctive to consumers, the public, and the trade. (Id.) Due to the recognized quality and innovation associated with the Stündenglass Marks, consumers are willing to pay higher prices for genuine Stündenglass products. (Id. ¶ 21.) It is precisely because of their higher sales value that Plaintiff's Stündenglass products are targeted by counterfeiters. (Id. ¶ 22.)

Defendants have offered to sell and sold within the United States products bearing reproductions, counterfeits, copies and/or colorable imitations of the Stündenglass Marks ("Counterfeit Goods") without Plaintiff's consent. (Id. ¶ 25.) The Counterfeit Goods were not made or authorized by Plaintiff. (Id.) Defendants have continued to sell Counterfeit Goods bearing the likeness of Stündenglass Marks in the United States. (Id. ¶ 27.) The infringing marks affixed to the Counterfeit Goods are identical with, or substantially indistinguishable from, the Stündenglass Marks. (Id. ¶ 28.) On August 8, 2022, Plaintiff's investigator purchased a glass infuser with an infringing Stündenglass Mark from Quality Cigarettes. (Id. ¶¶ 29–30.) Youssef authorized, directed, and/or participated in Quality Cigarettes' sale of Counterfeit Goods. (Id. ¶ 32.) After inspection, Plaintiff confirmed that the product purchased at Quality Cigarettes was a Counterfeit Good with an infringing mark affixed to it. (Id. ¶ 31.) Defendants' sale of Counterfeit Goods has caused Plaintiff to suffer losses and has caused damage to the goodwill and reputation associated with the Stündenglass Marks. (Id. ¶ 35.) Defendants' sale of Counterfeit Goods is likely to cause confusion among and deceive consumers who purchase them. (Id. ¶ 36.)

The Court finds that Plaintiff has sufficiently pled violations under the Lanham Act. Plaintiff is the exclusive owner of several registered trademarks. Defendants have sold Counterfeit Goods bearing the Stündenglass Marks without Plaintiff's consent. The Court accepts as true Plaintiff's contention that Defendants' unauthorized use of the Stündenglass Marks have caused and will likely cause consumer confusion. (See Motion at 9.) The Court finds Plaintiff's Complaint sufficient; this factor weighs in favor of granting the Motion.

### 3. Sum of money at stake

The fourth Eitel factor examines the amount of money at stake in the action relative to the gravity of the defendant's conduct. PepsiCo, 238 F. Supp. 2d at 1176. Plaintiff seeks a total monetary judgment of $150,925.28, consisting of statutory damages in the amount of $150,000 and costs in the amount of $925.28. (See Motion at 5.) Under the Lanham Act, the Court may award upwards of $200,000 per infringement and $2,000,000 for each willful infringement. 15 U.S.C. § 1117(c). "[I]n a case involving use of a counterfeit mark . . . the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater." Id. § 1117(b). Here, because Defendants have refused to litigate the case, it is not possible for Plaintiff to establish exact damages. (See Motion at 18.) However, Plaintiff seeks $150,000 as a fraction of its actual losses. (See id. at 19.) The Court finds that

Plaintiff's request for damages is commensurate with their statutory rights under the Lanham Act. This factor favors default judgment.

### 4. Possibility of dispute concerning material facts

Upon entry of default, all well-pleaded factual allegations are deemed true—except those pertaining to damages. TeleVideo, 826 F.2d at 917; Elektra Ent. Grp. Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. Feb. 11, 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Because Defendants have not appeared in this action or asserted any defenses, it is unlikely that disputes as to material facts will arise. This factor favors default judgment.

### 5. Whether default was due to excusable neglect

Under the sixth factor, the court must consider whether a defendant's default may have been due to excusable neglect. Eitel, 782 F.2d at 1472. This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the action. Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan, 23, 2012). Here, Defendants were properly served with the summons and Complaint on August 21, 2023. (See Quality Cigarettes Proof of Service; Youssef Proof of Service.) Accordingly, the Court concludes that Defendants' default is not the product of excusable neglect. This factor weighs in favor of granting the Motion.

### 6. Policy favoring decision on the merits

Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472 (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). However, where a defendant fails to appear and respond, default judgment is appropriate. Wecosign, 845 F. Supp. 2d at 1083. Here, Defendants' failure to appear or defend against this action renders a decision on the merits impracticable. Therefore, this factor favors of default judgment.

On balance, the Eitel factors weighs in favor of default judgment against Defendants. Thus, the Court **GRANTS** the Motion.

## C. Requested Relief

Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). A plaintiff must "prove up" the amount of damages. Aifang v. Velocity VIII, L.P., 2016 WL 5420641, at *7 (C.D. Cal. Sept. 26, 2016).

//

1. **Monetary relief**

   Plaintiff seeks a total monetary judgment of $150,925.28, consisting of statutory damages in the amount of $150,000 and costs in the amount of $925.28.  (See Motion at 5.)

2. **Injunctive relief**

   Plaintiff also seeks permanent injunctive relief.  (See Motion at 21.)  The Lanham Act gives the Court the "power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a); see Philip Morris USA, Inc. v. Castworld Prod., Inc., 219 F.R.D. 494, 502 (C.D. Cal. 2003).  Here, Plaintiff requests that the Court issue a permanent injunction against Defendants and their agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from the:

   > (a) Import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing advertising or promotion of the counterfeit Stündenglass products identified in the Complaint and any other unauthorized Stündenglass product, counterfeit, copy or colorful imitation thereof;

   > (b) Assisting, aiding or attempting to assist or aid any other person or entity in performing any of the prohibited activities referred to in Paragraphs (a) above.

   (Motion at 21.)  Further, Plaintiff requests that this Court order Defendants, at their cost, to deliver to Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the Stündenglass Marks.  (Id.)

   The Court finds that the proposed injunctive relief is appropriate because the claims otherwise warrant an injunction, and Defendants have chosen to ignore this lawsuit.  Failure to grant the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm.  See Philip Morris USA, Inc., 219 F.R.D. at 502.  The Court **GRANTS** Plaintiff's requested injunctive relief.

## IV.   CONCLUSION

For the above reasons, Plaintiff's Motion for default judgment is **GRANTED**.  Judgment shall be entered as follows:

1. Judgment is entered in favor of Plaintiff against Defendants in the amount of $150,925.28.

2. It is further ordered that a permanent injunction is issued against Defendants in accordance with the paragraphs above.

3. Plaintiff is **ORDERED** to mail a copy of this order and the judgment concurrently filed therewith to Defendants. Plaintiff shall file a proof of service with the Court within ten days of the date of this Order.

4. The January 29, 2024 hearing is **VACATED**.

5. The Clerk is directed to close the case.

**IT IS SO ORDERED.**